**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____
                                        )
IN RE: COVIDIEN HERNIA MESH             )
PRODUCTS LIABILITY LITIGATION           )       MDL
NO. II                                  )       No. 22-md-03029-PBS
_____ )
                                        )
LARRY PATTERSON and TAMMY               )
PATTERSON,                              )
                                        )
                Plaintiffs,             )
                                        )       Civil Action
v.                                      )       No. 22-cv-10153-PBS
                                        )
COVIDIEN, INC., et al.,                 )
                                        )
                Defendants.             )
_____ )
```

**MEMORANDUM AND ORDER**

June 5, 2026

Saris, J.

**INTRODUCTION**

This multidistrict litigation involves hernia mesh products manufactured by Defendants Covidien LP and Sofradim Production SAS (together, "Covidien"). In the first bellwether case, Plaintiff Larry Patterson ("Plaintiff") alleges that he was implanted with a Symbotex Composite Mesh ("Symbotex") during a 2017 hernia repair operation and that the Symbotex adhered to his bowel and eventually caused a bowel obstruction and hernia recurrence necessitating another operation in 2020. Plaintiff brings products liability claims against Covidien under Alabama law, including claims under

1

the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") and for negligence, breach of warranty, and negligent and fraudulent concealment and misrepresentation.

The parties have filed motions to exclude the testimony of eleven expert witnesses under Federal Rule of Evidence 702. This opinion addresses Covidien's motion to exclude the testimony of Dr. Paul Michaels, a pathologist offered by Plaintiff to opine on general causation and safer alternative designs. The Court assumes familiarity with its opinion resolving Covidien's motion to exclude the testimony of Dr. Stephen Ferzoco and incorporates the background and legal standards from that opinion here. See In re Covidien Hernia Mesh Prods. Liab. Litig. No. II, __ F. Supp. 3d __, __ (D. Mass. 2026) [2026 WL 1129617, at *1-4]; see also In re Covidien Hernia Mesh Prods. Liab. Litig. No. II, __ F. Supp. 3d __ (D. Mass. 2026) [2026 WL 1555914] (addressing Covidien's motion for summary judgment).

After hearing, the Court **ALLOWS IN PART** and **DENIES IN PART** Covidien's motion to exclude the testimony of Dr. Michaels (Dkt. 47).

## DISCUSSION

The Court begins by summarizing Dr. Michaels' qualifications and opinions. The Court then turns to the specific challenges Covidien raises to the admissibility of Dr. Michaels' testimony.

2

## I.    Dr. Michaels' Qualifications and Opinions

Dr. Michaels is a board-certified pathologist and cytopathologist. He is affiliated with an Oregon medical group called Pathology Consultants, serves as the chair of pathology at Bay Area Hospital in Oregon, and is a clinical assistant professor at Oregon Health & Science University. Covidien does not challenge Dr. Michaels' qualifications, and the Court finds that he is qualified to opine on general causation and safer alternative designs.

Dr. Michaels first describes his methodology for reaching his general causation opinions. He states that he has applied a weight-of-the-evidence methodology that includes consideration of the nine Bradford Hill factors: "strength, consistency, specificity, temporality, biological gradient, biological plausibility, coherence (as to not seriously conflict with generally known facts of the natural history and biology of disease), experimental evidence, and analogous conditions already known and accepted in the scientific literature." Dkt. 54-29 at 4; see Milward v. Acuity Specialty Prods. Grp., 639 F.3d 11, 17-19 (1st Cir. 2011) (describing weight-of-the-evidence methodology and Bradford Hill factors for assessing causation). He explains that his analysis "incorporat[es] . . . basic scientific and biological mechanisms of disease, pertinent clinical information, etiological risk factors, including potential causes of a disease process, and

3

epidemiological data regarding diagnostic entities." Dkt. 54-29 at 3. He adds that he conducted a literature review and assigned weight to different studies based on "the reliability of the study design, the particular groups studied, the study power and statistical significance in addition to overall and consistent trends, possible bias, replication of study findings amongst other researchers, accounting for confounding variables, type and degree of exposure, and biological plausibility." Id. at 4.

Dr. Michaels begins by opining that "[p]olyester surgical mesh[es]" like Symbotex "elicit[] a prominent chronic foreign body inflammatory reaction in tissue." Id. at 2. In support, he reviews a number of animal studies and one study of meshes explanted from a human patient finding a greater inflammatory response with polyester meshes than with meshes made from other materials. He also cites a study indicating lower rates of hernia recurrence and mesh shrinkage with polypropylene meshes than with polyester meshes.

Dr. Michaels next opines that "[t]here is a higher associated risk of postoperative complications . . . in the setting of a persistent and prolonged inflammatory response after mesh implantation." Id. at 9. He explains that polyester is known to degrade within the body, especially in an inflammatory environment, and that this degradation can cause a hernia recurrence. He acknowledges that a 2019 meta-analysis showed no

4

difference in recurrence rates between polypropylene and polyester meshes but notes that the meta-analysis included a wide range of studies of varying quality and design and that many of those studies had short follow-up periods. In support of his criticism of the follow-up periods, he cites a study of thirty-two patients who were implanted with a polyester mesh that found no recurrences at around thirty-four months but three at around 104 months, two of which involved breakdown of the mesh.

Dr. Michaels then explains that "[i]nflammation and repair typically involve a specific sequence of physiological and biochemical processes within the body that ultimately can result in fibrosis and adhesion formation when occurring within . . . cavities[] such as the peritoneum." Id. at 12. He notes that a "chronic inflammatory . . . reaction will occur indefinitely as long as the stimulus remains within the body and is exposed to the body's immune system." Id. at 13. Citing an animal study, he states that such a reaction can cause the formation of adhesions for years.

Turning to the collagen barrier, Dr. Michaels remarks that while numerous animal and clinical studies have tried to evaluate the effectiveness of various barriers and coatings on mesh products in preventing adhesions, many of these studies have too short follow-up periods and "involve scenarios that may not necessarily translate well with respect to conditions within the human body."

Id. at 14. He opines that "such a protective layer should preferentially need to be in place indefinitely to inhibit the eventual formation of fibrosis and scar formation at the site of the hernia given the ongoing chronic inflammation and fibrosis seen in the setting of a mesh foreign body." Id. at 15.[1] He then describes various clinical and animal studies comparing the formation of adhesions and inflammation in Covidien collagen-coated meshes versus other types of mesh. He concludes "that the collagen coating applied to the polyester mesh does not entirely shield the foreign polyester filaments from the immune system, as many studies do not show a substantial or significant difference between the adhesion formation i[n] uncoated versus coated mesh material." Id. at 18.

With respect to Covidien's collagen barrier, Dr. Michaels discusses a 2009 animal study showing some degradation of the barrier by seven days post-implantation, complete degradation by thirty days, and an increase in adhesions between those dates. He also summarizes various internal Covidien documents indicating that the collagen barrier degrades in significantly less than thirty days. He acknowledges the existence of clinical studies on the rates of complications in patients implanted with Symbotex,

---

[1] Elsewhere, Dr. Michaels opines that the barrier "must remain completely intact for a prolonged period of time, at least 6 months, if not indefinitely." Dkt. 54-29 at 3.

such as Gillion (2019). He notes that many of these studies measure adhesion formation over the course of days or months, "therefore precluding long-term assessment of complications." Id. at 19. He then reviews a number of animal and clinical studies comparing polyester and other types of meshes, concluding that "many studies have shown a more severe host tissue response and/or worse clinical outcomes in polyester meshes" even though "occasional very early studies did not support this assessment." Id. at 24.

Finally, Dr. Michaels describes his pathological examination of tissue specimens and a Parietex Optimized Composite Mesh ("PCOx") explanted from an individual named Claudia Juanz, who underwent surgery for an inflammatory mass in her abdomen seven years after a hernia repair using a PCOx mesh. Dr. Michaels explains that the specimens showed inflammation and adhesion formation consistent with complications resulting from the PCOx mesh. He states that his examination of the Juanz sample supports his opinion "that polyester surgical mesh causes a chronic inflammatory and foreign body reaction within the tissue that results in the development of fibrosis and adhesions that can ultimately lead to significant complications." Id. at 28.

Based on this analysis, Dr. Michaels concludes that "the use of polyester-based mesh in the treatment of hernia defects[] causes a prominent tissue inflammatory reaction which leads to scarring and increases one's risk for developing" various complications.

7

Id. at 57. He opines that "the underlying organs are not adequately protected from the polyester mesh by the collagen[ ]coating, which begins to degrade soon after implantation and is predominantly resorbed prior to the time when significant and ongoing scarring seen in association with hernia mesh is occurring." Id.

Dr. Michaels also asserts that "[l]arge pore, lightweight, and monofilament non-polyester hernia mesh products are a safer alternative for hernia mesh repair." Id.

## II.  Analysis

Covidien advances four sets of challenges to the admissibility of Dr. Michaels' testimony: (1) his opinions on safer alternative designs are speculative; (2) he unreliably bases certain of his opinions on an examination of the explanted mesh from a different patient; (3) his general causation opinions rest on cherry-picked data and other unreliable grounds; and (4) he improperly opines on Covidien's state of mind. The Court addresses these arguments.[2]

### A.    Safer Alternative Designs

Covidien first requests exclusion of Dr. Michaels' opinions on safer alternative designs to Symbotex. Covidien argues that Dr.

---

[2] Covidien also seeks to bar Dr. Michaels from opining on specific causation, on complications Plaintiff did not suffer (e.g., infections), and on products not at issue in this case (e.g., multifilament meshes). Plaintiff concedes that Dr. Michaels will not testify on any of these topics.

Michaels cannot testify about whether any alternative design would have prevented or reduced Plaintiff's injuries because he did not examine Plaintiff's explanted Symbotex or review any of Plaintiff's medical records and he has no knowledge of Plaintiff's medical history. In Covidien's view, this gap renders Dr. Michaels' opinions on safer alternative designs too speculative.

To prevail on an AEMLD claim alleging a design defect, a plaintiff must show, among other things, "that a safer, practical, alternative design was available to the manufacturer at the time it manufactured the allegedly defective product." Hosford v. BRK Brands, Inc., 223 So. 3d 199, 203 (Ala. 2016) (quoting McMahon v. Yamaha Motor Corp., U.S.A., 95 So. 3d 769, 772 (Ala. 2012)). "The existence of a safer, practical, alternative design may, in turn, be established by showing (1) that the injuries inflicted by the product would have been less severe or eliminated by the use of the alternative design and (2) that the utility of the alternative design outweighed the utility of the design actually used." Id.

Covidien seeks to exclude Dr. Michaels' safer alternative design opinions because his failure to review medical evidence about Plaintiff bars him from opining that an alternative design would have lessened or eliminated Plaintiff's injuries specifically. Dr. Michaels does not appear to offer any such opinion in his report. Rather, Dr. Michaels' safer alternative design opinions concern the safety and utility of an alternative

9

design in comparison to Symbotex's design and whether such a design generally would lessen or eliminate the types of injuries at issue in this case. This opinion may be irrelevant unless another expert testifies that the alternative design would have lessened or eliminated Plaintiff's specific injuries. The Court does not address relevance here.

### B.    Juanz Sample

Covidien next argues that Dr. Michaels should be barred from testifying about his examination of Claudia Juanz's explanted PCOx mesh sample to support his opinions that Symbotex's polyester material causes inflammation that leads to adhesions. Covidien contends that Dr. Michaels cannot reliably draw conclusions about Symbotex that are relevant to Plaintiff from an assessment of one sample of a different polyester mesh product with different properties that was implanted in a different patient. Covidien also stresses that Dr. Michaels examined the Juanz sample in connection with this multidistrict litigation, which suggests a selection bias that prevents reliable extrapolation to other patients.

The Court agrees with Covidien that Dr. Michaels' opinions based on his analysis of the Juanz sample are unreliable because of the specter of selection bias. "Selection bias refers to the error in an observed association that results from the method of selection of study participants" and is often caused by "the

existence of non-random differences between individuals who are selected as study participants and those who are not." Steve C. Gold et al., Reference Guide on Epidemiology, in Fed. Jud. Ctr., Reference Manual on Scientific Evidence 897, 943 (4th ed. 2025). Courts routinely exclude expert testimony as unreliable when the expert purports to draw generalizable conclusions from an analysis of a nonrandom sample with the potential for selection bias, including when the sample is selected by counsel or drawn exclusively or primarily from plaintiffs in litigation. See, e.g., Triant v. Am. Med. Sys. Inc., No. CV-12-00450, 2020 WL 4049844, at *12 (D. Ariz. July 20, 2020); In re Ethicon Inc. Pelvic Repair Sys. Prod. Liab. Litig., MDL No. 2327, 2018 WL 3545148, at *3 (S.D. W. Va. July 23, 2018); In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Pracs. & Prods. Liab. Litig., 214 F. Supp. 3d 478, 492-93 (D.S.C. 2016); In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig., 984 F. Supp. 2d 1021, 1039-40 (C.D. Cal. 2013); Orthoflex, Inc. v. ThermoTek, Inc., 986 F. Supp. 2d 776, 805 (N.D. Tex. 2013).

Plaintiff has not shown that Dr. Michaels may reliably draw generalizable conclusions about the inflammatory nature of Covidien's polyester meshes from the Juanz sample. Dr. Michaels did not choose the Juanz sample at random: Plaintiff concedes that Dr. Michaels examined the Juanz sample because Juanz was then a bellwether plaintiff in this multidistrict litigation, and it was

11

Plaintiff's counsel who selected Juanz as a bellwether plaintiff. This method of selecting the Juanz sample provides no assurances that Juanz is representative of all patients who have been implanted with Covidien's polyester meshes (let alone Symbotex), and Dr. Michaels offers no reason to believe that is the case. The Court therefore bars Dr. Michaels from testifying about his examination of the Juanz sample.

C. **General Causation**

Covidien also takes aim more broadly at Dr. Michaels' general causation opinions. Covidien asserts that those opinions are unreliable because Dr. Michaels (1) cherry-picks data to support his conclusions and applies inconsistent criteria when evaluating scientific literature, (2) improperly credits animal studies about the inflammatory nature of polyester collagen barrier meshes like Symbotex in the face of contrary clinical data without a basis for extrapolation, and (3) cites studies involving polyester meshes other than Symbotex that differ with respect to certain design features.

An expert's cherry-picking of data and inconsistent application of criteria when evaluating scientific literature may render his opinions unreliable. See, e.g., In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig. (No II) MDL 2502, 892 F.3d 624, 634 (4th Cir. 2018); In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig., 858 F.3d 787, 797

12

(3d Cir. 2017). However, the Court is not persuaded that Dr. Michaels' analysis suffers from any fatal flaws in this regard. Covidien primarily criticizes Dr. Michaels for discounting the results of certain clinical studies on the basis that they had too short of a follow-up period or too small of a sample size and then giving significant weight to the findings of other studies with similar or shorter follow-up periods and/or smaller sample sizes. But many of the studies Covidien criticizes Dr. Michaels for giving significant weight to are animal studies testing reactions to polyester rather than clinical studies testing complications in humans. See In re Covidien, __ F. Supp. 3d at __ n.3 [2026 WL 1129617, at *9 n.3] (rejecting a similar argument contesting Dr. Ferzoco's general causation opinions for this reason). Another supports Dr. Michaels' opinions on the risk of infections, a complication not at issue in this case. Moreover, Dr. Michaels cites a study of patients who were implanted with a polyester mesh that found no hernia recurrences at around thirty-four months but three at around 104 months, two of which involved breakdown of the mesh. This study suggests that clinical complications from hernia repairs and meshes may appear only after substantial periods of time and, thus, provides support for Dr. Michaels' decision to discount certain clinical studies with a short follow-up period

showing low complication rates.[3] Insofar as any inconsistencies exist in Dr. Michaels' application of criteria when evaluating scientific literature, they are not sufficiently numerous to render his opinions unreliable. Covidien may cross-examine Dr. Michaels on the topic.

Nor are Dr. Michaels' opinions unreliable on the basis of his citation to animal studies. While "courts often scrutinize expert opinions that rely primarily on [animal] studies" because of the limitations on extrapolating from such studies to outcomes in humans, animal studies may provide "a reliable basis for reaching a scientific conclusion" when there are ethical constraints on conducting comparable research in humans. Id. at __ [2026 WL 1129617, at *8]. Covidien challenges Dr. Michaels' heavy reliance on animal studies to support his opinion that polyester collagen barrier meshes like Symbotex trigger a chronic inflammatory response. Given the ethical constraints of studying whether materials trigger inflammation in humans, animal studies provide a sufficiently reliable basis for Dr. Michaels' opinion. Moreover, as this Court explained in rejecting Covidien's Rule 702 challenge to Dr. Ferzoco's general causation opinions, the clinical studies that Covidien cites in support of Symbotex's safety are not "so

---

[3] Plaintiff also cites a study concluding that half of mesh excisions resulting from complications from a hernia repair occur more than 3.75 years after implantation.

indicative of an absence of causation of adhesions that Dr. [Michaels] could not form a contrary opinion based on the other evidence like animal studies." Id. at __ [2026 WL 1129617, at *9].

Lastly, Covidien argues that Dr. Michaels improperly relies on studies involving polyester meshes other than Symbotex that differ as to certain design features. The Court rejected this argument in the context of Covidien's Rule 702 motion with respect to Dr. Ferzoco and does so again here for the same reasons. See id.

D.   State-of-Mind Testimony

Finally, Covidien seeks to bar Dr. Michaels from opining about its state of mind or knowledge. For example, Dr. Michaels concludes in his report that the "inappropriate use of polyester mesh products in the human body was . . . made aware to an R&D Engineer in Textiles at Covidien in March of 2010." Dkt. 54-29 at 57.

As this Court previously explained in resolving another of Covidien's Rule 702 motions, "a 'party's intent or state of mind is not the proper subject of expert testimony,'" but "an expert may indicate what information was in [a] [d]efendant['s] possession." In re Covidien Hernia Mesh Prods. Liab. Litig. No. II, No. 22-md-03029, 2026 WL 1146249, at *6 (D. Mass. Apr. 28, 2026) (alterations in original) (first quoting Doe ex rel. Pike v. Pike, 405 F. Supp. 3d 243, 250 (D. Mass. 2019); and then quoting In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods.

Liab. Litig., No. 18-md-2846, 2021 WL 3617152, at *7 (S.D. Ohio Aug. 16, 2021)). To police the boundary between proper and improper testimony in this area, Dr. Michaels "should refrain from using words like 'knew' or 'aware' and should use . . . language[] such as possessing information or acknowledging information." Id. (alterations in original) (quoting In re Davol, 2021 WL 3617152, at *7).

### ORDER

For the foregoing reasons, Covidien's motion to exclude the testimony of Dr. Michaels (Dkt. 47) is **ALLOWED** with respect to his opinions based on the Juanz sample and otherwise **DENIED**. However, the Court does not address the relevance of Dr. Michaels' opinions on safer alternative designs.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge

16