UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: COVIDIEN HERNIA MESH PRODUCTS LIABILITY LITIGATION NO. II,<br><br>This Document Relates To:<br><br>Larry Patterson<br>Case No. 1:22-cv-10153 | MDL No. 1:22-md-03029-PBS |

**DEFENDANTS' MOTION FOR REMITTITUR AND MEMORANDUM OF LAW IN SUPPORT**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

LEGAL STANDARD ..... 2

ARGUMENT ..... 2

I. Federal law governs remittitur. ..... 2

II. The Court should remit the jury's compensatory damages award. ..... 3

A. The jury's $77 million award to Mr. Patterson is grossly disproportionate to any injury established by the evidence at trial. ..... 4

B. The jury's $77 million award to Mr. Patterson is beyond the universe of acceptable awards. ..... 7

1. The verdict dwarfs awards in comparable First Circuit cases. ..... 8

2. The verdict dwarfs comparable federal hernia mesh verdicts. ..... 10

C. The $11 million judgment for loss of consortium to Mrs. Patterson is grossly excessive and far exceeds awards in comparable cases. ..... 11

III. Even if the Court applies Alabama law, the jury's verdict should be remitted. ..... 12

A. The $77 million award is excessive under Alabama law. ..... 13

B. The $11 million loss of consortium award is excessive under Alabama law. ..... 14

IV. The Court should remit the damages award accordingly. ..... 15

CONCLUSION ..... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Annoni Mesias v. Hosp. HIMA San Pablo*,
2021 WL 1125019 (D.P.R. Mar. 24, 2021) ....................7

*Aponte-Rivera v. DHL Sols. (USA), Inc.*,
650 F.3d 803 (1st Cir. 2011) ....................7

*Bartlett v. Mutual Pharmaceutical Co.*,
678 F.3d 30 (1st Cir. 2012), *rev'd on other grounds sub nom. Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472 (2013) ....................1, 9, 10

*Black v. Comer*,
38 So. 3d 16 (Ala. 2009) ....................14

*Campbell v. Kennedy*,
275 So. 3d 507 (Ala. 2018) ....................8, 13, 14

*Correa v. Hosp. San Francisco*,
69 F.3d 1184 (1st Cir. 1995) ....................7

*Correa-Carrillo v. Grupo HIMA San Pablo-Fajardo Inc.*,
594 F. Supp. 3d 414 (D.P.R. 2022), *aff'd*, 2026 WL 528601 (1st Cir. Feb. 17, 2026) .................... *passim*

*CSX Transp., Inc. v. Long*,
703 So. 2d 892 (Ala. 1996) ....................13

*Daniels v. E. Ala. Paving, Inc.*,
740 So. 2d 1033 (Ala. 1999) ....................3, 12, 13, 14

*In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*,
2022 WL 2654983 (S.D. Ohio July 8, 2022) ....................10, 12

*In re Davol, Inc.*,
2021 WL 4552395 (S.D. Ohio Oct. 5, 2021) ....................10

*Gutierrez-Rodriguez v. Cartagena*,
882 F.2d 553 (1st Cir. 1989) ....................4

*Hathcock v. Wood*,
815 So. 2d 502 (Ala. 2001) ....................15

*Hobart Corp. v. Scroggins*,
776 So. 2d 56 (Ala. 2000) ....................14

*Koster v. Trans World Airlines, Inc.*,
181 F.3d 24 (1st Cir. 1999) ....................................................................................6

*McCann v. Lee*,
679 So. 2d 658 (Ala. 1996) ....................................................................................15

*Pearson v. Callahan*,
555 U.S. 223 (2009) ....................................................................................8

*Pepsi Cola Bottling Co. of Luverne, Inc. v. Allen*,
572 So. 2d 434 (Ala. 1990) ....................................................................................3, 12, 13

*Sanchez v. Puerto Rico Oil Co.*,
37 F.3d 712 (1st Cir. 1994) ....................................................................................6

*Sears, Roebuck & Co. v. Harris*,
630 So. 2d 1018, 1034 (Ala. 1993), *as modified on denial of reh'g* (Jan. 7, 1994) ....................................................................................13

*Smith v. Kmart Corp.*,
177 F.3d 19 (1st Cir. 1999) ....................................................................................12

*Stinson v. Davol, Inc.*,
Case No. 2:18-cv-01022-EAS-KAJ (S.D. Ohio Nov. 8, 2023) ....................................................................................10

*Suero-Algarin v. CMT Hosp. Hima San Pablo Caguas*,
957 F.3d 30 (1st Cir. 2020) ....................................................................................2, 3

*Trainor v. HEI Hospitality, LLC*,
699 F.3d 19 (1st Cir. 2012) ....................................................................................7, 15

*Tuli v. Brigham & Women's Hosp.*,
656 F.3d 33 (1st Cir. 2011) ....................................................................................2

*United States v. McCarthy*,
761 F. Supp. 3d 328 (D. Mass 2024) ....................................................................................4

*Whitfield v. Melendez-Rivera*,
431 F.3d 1, 17 (1st Cir. 2005) ....................................................................................8, 9

**Other Authorities**

Fed. R. Civ. P. 50(b) ....................................................................................1

Fed. R. Civ. P. 59 ....................................................................................1, 2

Fed. R. Civ. P. 59(a) ....................................................................................1

Defendants Covidien LP and Sofradim Production SAS ("Defendants"), pursuant to Rule 59, move the Court, for remittitur of the jury's $88 million verdict.[1]

**INTRODUCTION**

The jury's verdict in this case—$77 million in compensatory damages to Larry Patterson and $11 million in loss of consortium to Tammy Patterson, for a total of $88 million in exclusively non-economic, compensatory damages—is extraordinary. It is, so far as Covidien has been able to determine, the largest non-economic damages verdict ever returned in a federal hernia mesh case. The verdict is nearly five times larger than the $16.5 million that a jury awarded in non-economic damages for a plaintiff who was seriously disfigured, nearly blinded, could not work, drive, read, have sex, or eat normally as the result of a defectively designed anti-inflammatory drug. *Bartlett v. Mutual Pharmaceutical Co.*, 678 F.3d 30 (1st Cir. 2012), *rev'd on other grounds sub nom. Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472 (2013). It exceeds by twenty-five times the $3 million that the First Circuit approved as the maximum permissible recovery in *Correa-Carrillo v. Grupo HIMA San Pablo-Fajardo Inc.*, 594 F. Supp. 3d 414 (D.P.R. 2022), *aff'd*, 2026 WL 528601 (1st Cir. Feb. 17, 2026), for a child left with cerebral palsy, quadriplegia, and the inability to speak, eat, focus, or even use the bathroom alone. And it dwarfs by orders of magnitude the largest verdicts returned in comparable federal hernia mesh bellwether trials—$500,000 and $250,000—for injuries strikingly similar to Mr. Patterson's. No evidence presented at this trial supports that result.

The consortium award is likewise unprecedented: it is, by itself, larger than the total

---

[1] Defendants are separately moving, pursuant to Fed. R. Civ. P. 50(b), to renew their motion for judgment as a matter of law on all claims on which the jury found for Plaintiffs and, alternatively, for a new trial under Rule 59(a). If the Court grants either of those contemporaneously filed motions, as it should, this motion for remittitur would be moot.

compensatory awards in most catastrophic-injury cases in this Circuit, for a claim in which loss of sexual relationship was disclaimed and Mr. Patterson remains a present, functioning spouse.

The awards are thus grossly disproportionate to any injury established by the evidence at trial. Federal law, which applies to this issue based on a straightforward *Erie* analysis, requires the Court to examine the size of the verdict and to bring the awarded damages in line with other similar cases. Covidien thus respectfully moves this Court to remit both awards to the maximum recovery for which there is evidentiary support.

## LEGAL STANDARD

Rule 59 authorizes a district court to remit a jury's damages award. "Remittitur is called for where an award is 'grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand.'" *Tuli v. Brigham & Women's Hosp.*, 656 F.3d 33, 44 (1st Cir. 2011) (quoting *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 566 (1st Cir. 2003)).

## ARGUMENT

### I. Federal law governs remittitur.

Federal law governs remittitur here. "[W]hen it comes to reviewing jury awards for excessiveness, federal courts sitting in diversity must apply state substantive law standards . . . [only] if the state law departs from the federal standards for judging excessiveness." *Suero-Algarin v. CMT Hosp. Hima San Pablo Caguas*, 957 F.3d 30, 40 (1st Cir. 2020) (citation omitted; omission in original). When the state-law standard "does not depart" from the federal standard for judging excessiveness, a district court instead applies the federal remittitur standard. *Id.*

State law does not depart from federal law just because the standard may be expressed in different words. In *Suero-Algarin*, for example, the First Circuit acknowledged that the Supreme Court of Puerto Rico had held that it would "not intervene in the decision on the estimation of

damages issued by the lower courts, unless the amounts granted are ridiculously low or exaggeratedly high," 957 F.3d at 41 (citation omitted), but applied the federal law "grossly excessive, inordinate, shocking to the conscience" standard because Puerto Rico's "exaggeratedly high" standard "echoe[d]" the federal law standard, "as evidenced by the fact that it 'has been expressed in terms similar to the federal standard,'" *id.* at 40–41 (citation omitted).

The same is true here. Alabama law asks whether a damages award "shocks the judicial conscience or is so great as to indicate that it is a product of bias, passion, or prejudice." *Pepsi Cola Bottling Co. of Luverne, Inc. v. Allen*, 572 So. 2d 434, 436 (Ala. 1990); *see also, e.g.*, *Daniels v. E. Ala. Paving, Inc.*, 740 So. 2d 1033, 1049 (Ala. 1999) (explaining that Supreme Court had to determine "whether the[] verdicts shock the conscience of this Court and, if so, whether [the Court] may infer the existence of bias, passion, or prejudice"). This standard "echoes" the standard applied by the First Circuit, which likewise allows remittitur when a verdict is "shocking to the conscience of the court." *Suero-Algarin*, 957 F.3d at 40–41 (citation omitted). So, as was true for Puerto Rico's remittitur standard, Alabama's remittitur standard "has been expressed in terms similar to the federal standard," and it thus does not displace the federal standard. *See id.* at 41 (citation omitted).

Because federal law and Alabama law equally support remittitur of the jury's verdict, this Court applies federal law. *See id.* And in any event, the jury's $88 million non-economic damages award on this record is grossly excessive, and cannot stand, under either.

## II. The Court should remit the jury's compensatory damages award.

The Court should remit the jury's $88 million award. The magnitude of that award is not supported by the evidence Plaintiffs introduced at trial, and it is massively out of step with awards in other hernia mesh cases in federal courts nationwide and with other personal-injury cases more generally based on a review of cases in the First Circuit.

**A. The jury's $77 million award to Mr. Patterson is grossly disproportionate to any injury established by the evidence at trial.**

The jury's $77 million compensatory damages award should be remitted because it is disproportionate to the evidence presented at trial. In assessing remittitur, "the paramount focus" is on "the evidence presented at trial." *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 579 (1st Cir. 1989). Although "converting feelings such as pain, suffering, and mental anguish into dollars is not an exact science," *Correa-Carrillo*, 594 F. Supp. 3d at 431 (citation omitted), "the inherent difficulty in determining award amounts does not render the awards unreviewable," *United States v. McCarthy*, 761 F. Supp. 3d 328, 336 (D. Mass 2024). Instead, remittitur is appropriate when the award "is 'grossly disproportionate to any injury established by the evidence.'" *Correa-Carrillo*, 594 F. Supp. 3d at 430 (quoting *Koster v. Trans World Airlines, Inc.*, 181 F.3d 24, 34 (1st Cir. 1999)).

Mr. Patterson sought damages for physical pain and mental anguish; permanent injuries or disfigurement; and aggravation of a preexisting condition. Tr. 13-118:21–119:3. Even viewing the evidence presented at trial in the light most favorable to Plaintiffs, $77 million is "grossly disproportionate to any injury established by the evidence" in this case. *See Correa-Carrillo*, 594 F. Supp. 3d at 430 (citation omitted). The trial evidence showed that, in July 2020, Mr. Patterson presented to his doctor with a bowel obstruction that Plaintiffs say was caused by his intestine adhering to the Symbotex mesh implanted three years earlier. Tr. 3-72:13–3-73:4. Dr. Lucian Newman III performed emergency surgery, resecting a portion of Mr. Patterson's intestine and removing part of the mesh. Tr. 3-73:5–9; Tr. 3-85:18–22; Tr. 5-47:20–5-48:5. Mr. Patterson described the pain after that surgery as "devastating" compared to the initial hernia repair. Tr. 5-49:8–18. Mrs. Patterson testified that she bathed, dressed, and fed Mr. Patterson for months after that surgery (Tr. 9-82:3–18), although she has never had to clean his surgery-site wound (Tr. 5-

117:23–118:1). Since the 2020 surgery, Mr. Patterson has had a chronic non-healing wound. Tr. 5-66:22–5-67:2; Tr. 6-79:15–17. Plaintiffs' causation expert, Dr. Ferzoco, also testified that Mr. Patterson will need additional surgeries in the future. Tr. 6-85:16–24. And Mr. Patterson testified that his injuries have exacted an emotional toll. Tr. 5-48:6–16; Tr. 5-64:18–65:7. Plaintiffs stipulated that they were not seeking damages for lost wages or medical expenses. Tr. 5-124:19–125:15.

But the question before the Court is not whether Mr. Patterson introduced sufficient evidence that he was injured. The question is whether the evidence can rationally produce a $77 million verdict—an award that would place this case among the largest non-economic damages awards ever awarded in any federal court in a product-liability, personal-injury case. It cannot. Mr. Patterson missed "about three months" of work after his 2020 surgery, but he returned to full-time employment at Unipress by the end of September 2020, where he worked until he switched jobs to work at Walmart "two years ago." Tr. 5-118:23–5-119:16; *see* also Doc. 278-2, at 90:24–91:16. He continues to be able to dress himself (but-for putting on his socks), to drive himself to work every day, and to work 25 hours a week ("five five-hour days" each week). Tr. 5-119:20–120:4.

The most acute event—the bowel obstruction—involved a single surgical episode six years ago. Mr. Patterson introduced evidence that he now has a small non-healing wound that he covers with a bandage (Tr. 5-67:17–68:4), but it is undisputed that he has been able to work, live, and perform daily functions. The evidence further demonstrated that other conditions, like his obesity and ongoing uncontrolled diabetes, contributed to his delayed wound healing, recurrent hernias,

lower extremity edema, and peripheral neuropathy.[2] And Mr. Patterson has not mitigated his damages—he has delayed in seeking care and treatment for his current recurrent hernia. Tr. 11-130:1–131:14. No rational path leads from this record to $77 million.[3]

The evidentiary gap is compounded by what evidence was absent from trial. Plaintiffs did not seek damages for lost wages or medical expenses. Tr. 5-124:18–125:15. No medical or mental health expert testified about the severity, expected duration, or prognosis of Mr. Patterson's pain or mental anguish. No expert provided testimony on his life expectancy. No expert offered an impairment rating or any other objective or quantifiable measure of Mr. Patterson's condition. No psychiatrist or psychologist addressed the nature of his mental anguish or how it had changed or would change over time. Indeed, the First Circuit has held, in the context of mental anguish, that a district court may account for the "absence of" expert "psychological and psychiatric evidence" when "fashioning a remittitur." *Sanchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 724 & n.13 (1st Cir. 1994); *accord Koster*, 181 F.3d at 35. That rule further compels remittitur of the jury's award here.

Because the jury's $77 million award "is so grossly disproportionate to any injury established by the evidence as to be unconscionable as a matter of law," *Koster*, 181 F.3d at 34, it should be remitted.

---

[2] *See, e.g.*, Tr. 5-120:25–5-121:19 (Mr. Patterson); Tr. 3-85:8–11, Tr. 4-40:13–4-42:18 (Dr. Lucian Newman III); ECF No. 280 (Dr. Fuller), at 42:2–17, 77:20–23, 78:1–4, 118:2–23, 100:9–101:10, 84:20–23, 91:9–92:16, 136:8–138:21.

[3] Moreover, at least according to the life expectancy table that the Court admitted into evidence without a sponsoring witness, over objection, and on which no witness provided any testimony, context, or conclusion about how long Mr. Patterson might live given his underlying health and medical conditions, some of which were pre-existing conditions before even his 2017 hernia surgery, Plaintiffs say that Mr. Patterson will likely live another 21 years or more.

### B. The jury's $77 million award to Mr. Patterson is beyond the universe of acceptable awards.

Remittitur also is warranted because the jury's $77 million award falls far outside "the wide universe of acceptable awards." *Correa v. Hosp. San Francisco*, 69 F.3d 1184, 1198 (1st Cir. 1995). In deciding whether a jury's damages award is excessive, "[a]wards in comparable cases are instructive." *Aponte-Rivera v. DHL Sols. (USA), Inc.*, 650 F.3d 803, 811 (1st Cir. 2011); *accord Trainor v. HEI Hospitality, LLC*, 699 F.3d 19, 33 (1st Cir. 2012) ("A review of cases with comparable facts corroborates our conclusion that [the award] is grossly excessive here."). "In diversity cases, the First Circuit has decided that federal courts are not obliged to apply state substantive law to award calculations; instead, courts use other federal cases to review jury awards." *Annoni Mesias v. Hosp. HIMA San Pablo*, 2021 WL 1125019, at *6 (D.P.R. Mar. 24, 2021) (citing *Suero-Algarin*, 957 F.3d at 40–42; *Marcano Rivera v. Turabo Med. Ctr. P'ship*, 415 F.3d 162, 172 (1st Cir. 2005)).[4]

In identifying comparable cases, Covidien examined: (1) cases from this Circuit involving catastrophic or permanently disabling injuries—that is, injuries that a reasonable observer would find more severe than those at issue here; (2) cases in this Circuit involving physical injuries with permanent impairment, to assess the range of awards for serious but non-fatal conditions; (3) federal hernia mesh bellwether verdicts nationwide, to evaluate what juries have awarded for injuries and allegations similar to those here; and (4) the largest compensatory damages verdicts or remittiturs affirmed by the Alabama Supreme Court to assess the range under the alternative state-law standard. By every measure, the jury's $77 million verdict is not just an outlier, but that

[4] *Accord, e.g.*, *Correa-Carrillo*, 594 F. Supp. 3d at 430 ("[I]n [a] diversity case, federal courts should use other federal cases to review jury awards.").

also far exceeds any other award that has been sustained—including in cases that involved "truly horrific" or disabling injuries.

**1. The verdict dwarfs awards in comparable First Circuit cases.**

Courts have remitted awards that were far smaller, for injuries that were far more severe.[5] For example, just this year, the First Circuit affirmed the remittitur of a $16 million compensatory award to $3 million. *Correa-Carrillo*, 2026 WL 528601, at *1. In that case, the district court found that $3 million was the maximum allowable recovery for physical damages and mental anguish and suffering for a child plaintiff who "suffer[ed] from cerebral palsy, quadriplegia, asthma, developmental delay, and septicity" due to medical negligence at birth. 594 F. Supp. 3d at 420, 424, 429–32. In affirming that substantial remittitur, the First Circuit explained that the plaintiff had "not identified any facts, evidence, or sufficiently analogous cases that would support the original $16 million award" or shown "any abuse of discretion in the district court's decision granting remittitur." 2026 WL 528601, at *1. If a lifetime of severe complication from birth called for remittitur from $16 million to $3 million—as was the case in *Correa-Carrillo*—surely substantial remittitur of Mr. Patterson's $77 million verdict is warranted here. Mr. Patterson, who according to Plaintiffs has a life expectancy of 21.9 years, is mobile, can drive, participates in family life, still goes to the gym (just not as often, Tr. 5-105:25–106:4), and works 25 hours/week.

The First Circuit in *Whitfield v. Melendez-Rivera* similarly remitted a $4 million jury verdict for pain and suffering to $3 million. 431 F.3d 1, 17 (1st Cir. 2005), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). The plaintiff there had been shot twice in

---

[5] Although "federal courts should use other federal cases to review jury awards," *Correa-Carrillo*, 594 F. Supp. 3d at 430, comparable Alabama verdicts likewise show that the verdict here is excessive. Indeed, as explained below, the Supreme Court of Alabama has not affirmed more than $3 million in compensatory damages for a single plaintiff in a personal-injury case. *See Campbell v. Kennedy*, 275 So. 3d 507, 518–19 (Ala. 2018).

the back of his leg, lay face-down for several minutes in the street, and was arrested and denied medical treatment until an ambulance arrived. *Id.* at 16. The plaintiff then underwent two surgeries but nonetheless sustained "permanent" injuries that caused lasting weakness in his knee, limited range of motion in his ankle, and neurological damage in the calf. *Id.* at 16–17. He also presented expert testimony that he suffered a 48 percent impairment of his left lower extremity and a 19 percent impairment of his entire body. *Id.* at 17. The First Circuit held that this "evidence of [the plaintiff's] physical and mental pain and suffering would not support a maximum recovery in excess of $3 million." *Id.* Notably, the *Whitfield* plaintiff presented evidence that Mr. Patterson did not—expert testimony quantifying the degree of permanent impairment. *See id.* Even so, the First Circuit held that $3 million was the maximum. *Id.* Yet here, the jury arrived at a number twenty-five times larger.

Other cases involving more severe injuries demonstrate how grossly excessive the jury's verdict was. Consider *Bartlett.* In that pharmaceutical product-liability case, the plaintiff suffered "truly horrific" injuries from the use of a medication—nearly two months in a burn unit; "months in a medically-induced coma"; "burns over nearly two-thirds of her body"; "a year being tube fed and [] two major septic shock episodes"; and "12 eye surgeries" with "many more ahead." 678 F.3d at 43. The plaintiffs also presented evidence of "severe" permanent injury, including an inability to "eat normally due to esophageal burns," to "have sexual relations due to vaginal injuries," to "engage in aerobic activities due to lung injuries"; an inability to read, drive, or work; near blindness; and serious disfigurement in the face and body. *Id.* The jury awarded $16.5 million for pain, suffering, and loss of enjoyment of life, which the First Circuit held was "not so clearly disproportionate to the harm suffered that a court must set it aside." *Id.* The jury returned that verdict after hearing detailed medical testimony—including from the plaintiff's burn surgeon who

described her experience as "hell on earth"—that explained permanent impairments across multiple body systems. *Id.* at 43–44. Mr. Patterson's award is nearly five times greater than the *Bartlett* verdict, even though his injuries are, by any objective measure, far less severe.

**2. The verdict dwarfs comparable federal hernia mesh verdicts.**

The jury's award also exceeds what has been awarded in other federal cases involving alleged injuries caused by hernia mesh products. Indeed, it does not appear that any federal jury has returned a *seven-figure* verdict in a federal hernia mesh case—much less a $77 million one.

Two verdicts from the Bard MDL are instructive. In *Milanesi v. C.R. Bard, Inc.*, the plaintiff, like Mr. Patterson, had an umbilical hernia, which the plaintiff's surgeon repaired using Ventralex mesh. *In re Davol, Inc.*, 2021 WL 4552395, at *2 (S.D. Ohio Oct. 5, 2021). The plaintiff later began experiencing abdominal pain, and his surgeon discovered "purulent material" and that the bowel was "densely adherent" to the mesh. *Id.* The surgeon removed "the infected Ventralex" and resected the plaintiff's bowel, removing nine centimeters of small intestine. *Id.* at *3. (For comparison, Mr. Patterson had three inches of his bowel removed. Tr. 3-85:18–22.) A few days later, the plaintiff underwent emergency surgery to clear a bowel obstruction caused by adhesions. *Id.* And the plaintiff then developed a recurrent incisional abdominal wall hernia near his previous surgery sites, requiring yet another surgery to repair. *Id.* At trial, the jury awarded $250,000 for negligent design defect and a $5,000 award for loss of consortium. *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, 2022 WL 2654983, at *1 (S.D. Ohio July 8, 2022). The jury here issued an award 308 times larger on strikingly similar facts.

Similarly, in *Stinson v. Davol, Inc.*, Case No. 2:18-cv-01022-EAS-KAJ (S.D. Ohio Nov. 8, 2023), the jury returned a verdict in a hernia mesh MDL bellwether trial that parallels this case. Like Mr. Patterson, the *Stinson* plaintiff suffered mesh-related complications requiring surgical intervention. But, there, the plaintiff's mesh had "rolled up" into a scarred ball causing nerve

entrapment and chronic pain, necessitating a surgery to remove the mesh, which was "slow going and extremely difficult" due to significant scarring. No. 2:18-cv-01022-EAS-KAJ (S.D. Ohio), ECF No. 225 (Mar. 13, 2023), Ex. A, at 8–9. And the plaintiff also experienced chronic post-surgical pain, difficulty urinating, and ongoing symptoms even after mesh removal. *Id.* at 9–10. The jury later awarded $500,000 in compensatory damages. No. 2:18-cv-01022-EAS-KAJ (S.D. Ohio), ECF No. 381 (Nov. 8, 2023), Ex. B, at 8–9.

* * *

As was true for the plaintiff in *Correa-Carrillo*, Plaintiffs cannot identify "any facts, evidence, or sufficiently analogous cases" that would support the jury's $77 million verdict. *See Correa-Carrillo*, 2026 WL 528601, at *1. The award is not commensurate with the injuries Mr. Patterson suffered and dwarfs other awards in this Circuit for far more catastrophic, life-altering injuries and other hernia mesh verdicts in cases with similar facts. A substantial remittitur is warranted.

### C. The $11 million judgment for loss of consortium to Mrs. Patterson is grossly excessive and far exceeds awards in comparable cases.

The jury's $11 million loss-of-consortium award is likewise grossly disproportionate to the evidence and should be remitted.

At trial, Mrs. Patterson described caring for her husband in the months after his July 2020 surgery and explained that their marriage had been strained by his injuries. Even so, the evidence established that Mr. Patterson is not incapacitated. He works, lives at home, and remains Mrs. Patterson's spouse and companion. Mr. Patterson testified that the Pattersons still go shopping together, spend time with their grandchildren, and care for their pets. In short, the consortium claim is not premised on the total loss of a spouse's companionship. What's more, the jury's award could not even account for a loss of sexual relationship, which was expressly disclaimed. On these

facts, the evidence cannot rationally support $11 million—a figure that, by itself, dwarfs the compensatory awards for injured plaintiffs in other cases in this Circuit and in the federal hernia mesh bellwether cases that were tried in the Bard MDL.

No comparable case supports an $11 million consortium award on these facts. *Smith v. Kmart Corp.*, 177 F.3d 19 (1st Cir. 1999), is instructive. There, the plaintiff's husband witnessed his wife's accident, feared she was dead, and performed CPR on her. *Id.* at 32. He testified that they no longer touched, talked, or had a physical relationship. *Id.* And he worked 18 to 20 hours per day to compensate for the work that his wife could no longer do, testified that he had "no personal life," and described himself as "emotionally tired, mentally tired, [with] periods of fear." *Id.* The First Circuit nonetheless held that a $250,000 award "for past and future emotional pain and suffering, loss of enjoyment of life, and loss of consortium" was "grossly excessive" and remitted it to $100,000. *Id.* at 32–33. And in *Milanesi*, a hernia mesh case involving bowel resection, bowel obstruction, and hernia recurrence, the jury awarded $5,000 for loss of consortium. 2022 WL 2654983, at *1 (S.D. Ohio July 8, 2022). These cases confirm that an award of $11 million for the spouse of a plaintiff who still lives, works, provides spousal support, and participates in family life is grossly excessive.

**III. Even if the Court applies Alabama law, the jury's verdict should be remitted.**

Even if this Court decides that Alabama law applies, the verdict still should be remitted. Under Alabama law, a court may remit a jury's damages award when "the award shocks the judicial conscience or is so great as to indicate that it is a product of bias, passion, or prejudice." *Allen*, 572 So. 2d at 436. In this context, "bias, mean[s] 'to incline to one side,'" and "passion" means "moved by the feelings or emotions," which "may include 'sympathy' as a moving influence." *Daniels*, 740 So. 2d at 1050 (quoting *Yarbrough v. Mallory*, 144 So. 447, 448-49 (Ala. 1932)). "And "'prejudice' includes forming an opinion 'without due knowledge or examination.'"

*Id.* "The internal evidence, the verdict itself, in the light of the facts clearly disclosed by the evidence, usually furnishes the determining data." *Id.*

**A. The $77 million award is excessive under Alabama law.**

For the reasons set forth above, the jury's $77 million compensatory award is shocking to the conscience. Indeed, "the facts clearly disclosed by the evidence" show that there is no support for an award of this magnitude. *See supra* at 4–6. Accordingly, the jury's verdict is "so great" that it can only be explained as the product of bias, passion, or prejudice—a jury that was moved by feelings, that was inclined to one side, or one that formed its judgment without due knowledge or examination. *See Daniels*, 740 So. 2d at 1050; *Allen*, 572 So. 2d at 436. This Court need not find that the jury "conscious[ly] violat[ed]" any duty. *Daniels*, 740 So. 2d at 1050. The size of the verdict itself is evidence that it was flawed.

Comparable Alabama cases also support remittitur. When, as here, a verdict is flawed, a court may properly consider "a comparison of jury verdicts in similar cases." *Campbell*, 275 So. 3d at 518; *see also, e.g.*, *CSX Transp., Inc. v. Long*, 703 So. 2d 892, 899 (Ala. 1996) ("We have reviewed the verdicts of other hearing-loss cases involving railroad employees, and we conclude that [the plaintiff's] compensatory damages award is excessive.").

Alabama courts have ordered remittitur of much smaller verdicts than this one. For example, in *Sears, Roebuck & Co. v. Harris*, the Alabama Supreme Court remitted a $5.5 million multi-plaintiff compensatory damages award to $850,001. 630 So. 2d 1018, 1034 (Ala. 1993), *as modified on denial of reh'g* (Jan. 7, 1994). That case involved carbon monoxide poisoning from a defective water heater. And although the Alabama Supreme Court could not "discount the mental anguish associated with the experience of almost dying of carbon monoxide poisoning in one's sleep," the Court nonetheless held "the compensatory damages awards [we]re excessive" because "the plaintiffs' special damages in th[at] case [we]re minor and their long-term symptoms or

permanent injuries relatively slight." *Id.* at 1033. Indeed, as to the largest $2 million verdict awarded to one of the plaintiffs, the Court ordered remittitur to $500,000 even though the plaintiff "suffered from long-term effects of carbon monoxide poisoning," developed "aggravated" hypertension, and experienced "continuous headaches, dizziness, nausea, and shortness of breath, which restricted her movement." *Id.* at 1034; *see also, e.g.*, *Hobart Corp. v. Scroggins*, 776 So. 2d 56, 66–67 (Ala. 2000) (affirming trial court's remittitur of $510,000 verdict to $250,000 in case involving "a traumatic amputation [and] permanent disfigurement").

Indeed, the verdict here is orders of magnitude larger than what has been awarded in Alabama. For example, in *Black v. Comer*, the Alabama Supreme Court upheld a $350,000 compensatory award to a medical-malpractice plaintiff who suffered "permanent loss of his kidney," "internal bleeding," "incredible pain," "trouble breathing," and who "thought 'that [he] was gone, [that he] was going to die.'" 38 So. 3d 16, 28 (Ala. 2009). And it does not appear that the Alabama Supreme Court has affirmed a compensatory-damages award larger than $3,000,000 for a single plaintiff in a personal-injury case. *See Campbell*, 275 So. 3d at 518–19. In *Campbell* itself, the Alabama Supreme Court affirmed a $3 million verdict for a plaintiff who suffered a shattered femur requiring surgical rod installation, bilateral jaw fractures, pelvic injuries, and permanent physical limitations that restricted him to part-time work. *Id.* at 508, 515–18. Mr. Patterson's verdict is more than twenty-five times larger.

Under Alabama law, this verdict cannot stand.

**B. The $11 million loss of consortium award is excessive under Alabama law.**

The $11 million consortium award is likewise unsupportable under Alabama law.

As explained above, the evidence showed that Mr. Patterson remains a present, functioning spouse. A verdict of $11 million on this record—nearly four times the largest total compensatory

award the Alabama Supreme Court has ever affirmed for a single injured plaintiff—reflects a jury verdict that resulted from passion, prejudice, or bias instead of a proper assessment of the evidence.

And comparable cases confirm the result. In *Hathcock v. Wood*, the husband's accident "left him permanently unable to support, comfort, and care" for his wife—where expert testimony established that a head injury had altered his personality, caused him to become "emotionally fragile"—so much so that he attempted suicide—and left him effectively unable to function as a spouse. 815 So. 2d 502, 510 (Ala. 2001). The Supreme Court was thus "reluctant to disturb" the jury's $200,000 loss-of-consortium award (or its $600,000 award to the husband for "physical injuries, mental anguish, and lost earnings"). *Id.*; *see also McCann v. Lee*, 679 So. 2d 658, 660 (Ala. 1996) (holding that trial court properly remitted wife's $1 million consortium award to $250,000 even where husband suffered depression, became impotent, and "rarely left his home" after doctor's malpractice). Here, by contrast, Mr. Patterson has not been rendered permanently unable to support or care for his wife. Yet this loss of consortium award is more than 50 times what the Alabama Supreme Court has deemed appropriate for the complete and permanent loss of spousal capacity.

## IV. The Court should remit the damages award accordingly.

The First Circuit "adheres to the 'maximum recovery rule,' which permits [a court] to direct a remittitur geared to the maximum recovery for which there is evidentiary support (subject, of course, to the plaintiff's right to reject the remittitur and instead elect a new trial on the disputed damages claim)." *Trainor*, 699 F.3d at 33.

For the reasons set forth above, the maximum compensatory damages award this record can support is an amount less than $3 million. That figure is informed by First Circuit precedent, which recently affirmed $3 million for a plaintiff with a lifetime of catastrophic impairment from birth. *Correa-Carrillo*, 2026 WL 528601, at *1. Similarly, the maximum consortium award this

record can support is less than $100,000, in light of Mrs. Patterson's own testimony that her marriage is intact and the fact that Mr. Patterson continues to be a working, participating spouse.

**CONCLUSION**

For these reasons, the Court should order remittitur of the jury's compensatory damages award to an amount less than $3 million and its loss of consortium award to no more than $100,000.

Dated: September 4, 2026

Respectfully submitted,

DEFENDANTS COVIDIEN LP and SOFRADIM PRODUCTION SAS

*/s/ Jessica C. Wilson*

Jessica C. Wilson (BBO# 692674)
DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, Massachusetts 02110-1447
Tel: 617-406-6000
Fax: 617-406-6100
jessica.wilson@us.dlapiper.com

Christopher G. Campbell
DLA Piper LLP (US)
One Atlantic Center
1201 West Peachtree St., Ste. 2900
Atlanta, GA 30309
Tel: 404-736-7808
Fax: 404-682-7874
Christopher.campbell@us.dlapiper.com

Lyn Pruitt
DLA Piper LLP (US)
10809 Executive Center Drive, Suite 205
Little Rock, AR 72211
Tel.: (501) 944-5510
Fax: (214) 665-5982
lyn.pruitt@us.dlapiper.com

Stanley E. Blackmon
Lindsey C Boney IV
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North

Birmingham, AL 35203
Tel: (205) 521-8000
sblackmon@bradley.com
lboney@bradley.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the above document was served via the CM/ECF system upon counsel of record for each party on this 4th day of September, 2026.

Date: September 4, 2026

*/s/ Lindsey C Boney IV*
Lindsey C Boney IV